The Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this honorable court may now draw near and they will be heard. God save the United States and this honorable court. Good morning, everyone. I want to make a quick announcement. Judge Erickson, who is a member of this panel, was unavoidably prevented from participating this morning. But I want to advise counsel and others that are here that he will fully participate in the case and will listen to the arguments that are recorded here, as all of the arguments are. And as I said, his participation will be just as if he were here in court this morning. So with that, I think we'll dispense with the announcement of the full calendar. We've got a full morning of arguments. And so with that, Ms. Polk, would you call our first case? Yes, Your Honor. The first case this morning, numbers 18-16-86, 18-17-65, Minnesota, Lakes and Parks Alliance of Minneapolis, et cetera, versus the Metropolitan Council, et cetera. All right, Mr. Landon. Good morning, Your Honor. You may proceed when you're ready. Thank you. May I please court? This appeal comes to you after the district court dismissed at summary judgment my client's NEPA environmental challenge to the Southwest Light Rail Project here in Minnesota. Reversal of the district court's summary judgment decision is appropriate in this case because the record demonstrates that the Met Council, the agency responsible for conducting the environmental review, prematurely eliminated reasonable alternatives. Not because of a careful evaluation of the environmental risks as NEPA requires, but because of the steady drumbeat of political expediency. Because this challenge is about the prior political conduct of a state actor rather than a technical challenge to that that was recognized by the district court in this case was both appropriate and necessary. Counsel, you would agree though that this court has never recognized that cause of action before, would you not? Correct. There is no precedent in this case that deals with these facts. We certainly acknowledge that the Eighth Circuit has previously held that there is no private right of action under NEPA. However, the court has not precluded any NEPA claims such as this where a state actor was in a position to eviscerate any potential federal remedy under the APA. So do we, if we accept your argument, are we overruling previous cases or are you asking us to overrule previous cases? No, I don't believe that there's any previous case that would have to be overruled. I believe that it is a unique circumstance that has not been before the court and I don't believe that any of the previous cases preclude that outcome. And we think that the district court correctly recognized this in applying the reasoning from the Limehouse case out of the Fourth Circuit. As I said, this case has... Well, let me ask this question and this is really a practical question to clear up something for my benefit if you will. If we look at the operative complaint in this case is an amended complaint. Correct. If we look at that amended complaint, what's the relief? What is the ultimate relief that is being sought? In other words, what do you want, what did you want the district court to do? What do you want the court to do now? Yes, your honor. We're seeking declaratory and adjunctive relief. We're asking for a that it's obligated to comply with and enjoin it from further construction on the project until a final environmental impact statement has satisfied NEPA. Well, really, from a practical standpoint, isn't that relief an impossibility now because the FTA has already issued, as I understand it, the record of decision and the final environmental impact study has been completed and been approved? I... I mean, this is... And those things were done by the Federal Transit Administration. Correct. Right? Correct. And they're not a party. Correct. They're no longer a party. What can the court really do at this point? Hasn't the ship sailed, so to speak? No, I don't believe it has, your honor. And it's not an impossibility because the regulations certainly allow for any... for a supplemental environmental impact statement to be released if there are any changes in circumstances that require further consideration. I do believe that a court order in this case finding that the Met Council had inappropriately politically predetermined the outcome would constitute the circumstances that would allow for a supplemental environmental impact statement to issue, even though the ROD has already issued. That's not uncommon. What's your best case that we could go to to see where this kind of relief in this procedural posture has been granted? In this procedural posture, you mean after the ROD has... Post ROD, post expiration of time for... to proceed under the Administrative Procedures Act, post final environmental impact study. Sure. And I will acknowledge, your honor, that we are in a unique procedural posture in this case, and that most of the cases that have dealt with them have been in the context of the APA, where a challenge has been made to the final federal agency action, and the court has overturned a decision within that context. I don't have a case to point to where there was a challenge to the state actor's conduct, and the court considered it outside of the context of the APA. Counsel, isn't the fact that there are no cases suggestive that perhaps Congress didn't intend the statute to work the way you want it to work? I don't think that's the case, your honor. I think it's more indicative of the unique scenario that we're in. In this scenario, the Met Council was in a unique position where it was essentially wearing three different hats, and I haven't seen any similar case that has dealt with a state actor that had these three hats. It was the co-lead agency responsible for drafting the environmental impact statement. It was also the state agency responsible for constructing and implementing the program. Importantly, it was the state agency responsible for shepherding the process through a highly political state approval process. We believe that it was that third hat, that third role that the Met Council played that interfered with its first responsibility, which was to create an environmental impact statement compliant with NEPA regulations. Your client still could have raised a NEPA claim under the APA, correct? Correct, although if you look at the procedural posture of this case, the lawsuit was filed in 2014, September of 2014, before the Met Council had even issued a supplemental draft environmental impact statement. At that point, there was no possibility of APA challenge because the ROD didn't issue for two years after the lawsuit was initially filed. But once it did issue, you could have filed the APA claim, is that correct? Yes, an APA claim could have been filed against the FTA. At that point, we were two years into this case and it became clear that the conduct that we were challenging was outside the scope of what the APA is meant to review. Did your client submit comments on the public notice and comment? In other words, did you supplement the administrative record during this process to facilitate your ability to challenge it under the APA? Well, no. Again, if you look at the the final environmental impact statement was issued in May 2016, and we were in the midst of discovery in this case. We hadn't even received all of the documents that had been requested until after the comment period for the final impact statement had passed. Discovery continued after the ROD issued in this case. I believe the ROD issued in July 2016. Discovery didn't end until December of 2016. At that point, we were still conducting discovery into the claims about the Met Council's conduct and we believe that the district court correctly recognized that this case was not just a placeholder that was to bide time until the ROD issued. Well, I mean, the district court did acknowledge that this limited cause of action was simply to ensure that, I forget specifically, I'm going to misquote a little bit, but essentially the federal right was not eviscerated, right? Correct. So the federal right was not eviscerated during this time period and then you had an opportunity to exercise that federal right and yet your client chose not to. That's what I'm struggling with a prior, you know, political conduct of the state agency. This is not a technical challenge to the adequacy of the specific analyses in the environmental impact statement. The FTA in issuing the ROD and reviewing the FEIS is not looking to the political motivations of the Met Council in preparing the draft, the supplemental draft impact statement that was at issue and the final impact statement that was released. The APA is intended to review whether the federal agency action complies with NEPA and what our argument is here is that FTA was not able to do so because the environmental review that it was analyzing was tainted by political predetermination and that the report that it was looking at in the first place was not effective because the, you know, as the NEPA regulations require, the environmental impact statement needs to be issued at an early enough time so that it can practically serve as an important contribution to the decision-making process, not used to rationalize or justify a decision that was already made. And that is what we say happened in this case and it was the discovery into the Met Council's conduct and the political negotiations that occurred during the the reasonable alternatives had been eliminated before this case or before the review was ever issued, before an environmental review of the plan that was eventually selected had even been issued. And we believe that was that that conduct is outside the scope of the APA review, which is why we don't think it was necessary in this case. But well, shouldn't the FTA be a party to all of this? If you're seeking relief from the court that brings this project to a halt and you want some things redone here, shouldn't the FTA be a party to that? Doesn't that, don't they have a place at the table, so to speak? We don't believe that they need to be a party, your honor. I believe that... And after all, as I read this, the the FTA is ultimately, was ultimately responsible for at least some of these tasks like the environmental impact study, but it allows local entities, governmental entities to have a part in the process. At least that's my understanding how this works. We don't deny that. We certainly... If you say it was done wrong, improperly, there's some problems with how it was handled, but it was ultimately under the purview of the FTA. How do you get around the thought that the FTA should be involved in this? Well, again, we're not saying that the FTA... You know, the APA seems to be the ideal mechanism to challenge a project like this and how the project was handled that involves the federal government player. I understand, your honor. And we're not saying that the FTA's review of the final environmental impact statement was itself improper. That's why we're not challenging what the FTA's conduct is there. We're saying that the final environmental impact statement that was presented to the FTA for review was essentially pretext. It was pretext for a predetermined outcome that was identified in the summary judgment record as occurring as early as October 2013. But isn't that a question for the FTA to address? Well, I believe that's outside the scope of what's reviewed in the APA challenge. And in fact, if you look at the 28J letter that was submitted by the Met Council in this case, the Save Our Sound case, that demonstrates precisely the difficulty that would be presented in an APA challenge where the court was not willing to supplement the record with evidence of the communications and settlement negotiations that the plaintiff in that case believed showed that there had been a predetermination. The court was only interested in the federal agency's review of the environmental analysis itself. Just to be clear, the relief you're seeking here is a new restarting of the NEPA process. Correct. Do you agree that the Met Council cannot accomplish that on its own? I, well, I don't believe that it can accomplish it. I believe that it can request permission to conduct a supplemental environmental impact statement. Which would be authorized by the FTA? Yes. So essentially you want the FTA to reauthorize NEPA in this, the NEPA process in this case? Yes, we believe that would happen if, for the relief we're seeking. Sam, just about at my rebuttal time, so unless you have any other questions, I'll save the rest of my time for rebuttal. Well, we've asked a lot of questions. I'll allow some additional rebuttal if you want to take a minute or two, if there's a point you'd like to make before you sit down. Sure. One point that I'd like to make before I sit down then is that, you know, just looking at the timeline, we believe that one of the clearest indicators of how this was a decision that was made based on, you know, political expediency rather than the environmental review, is if you look at the significant shift in the preferred alternative that occurred from the draft environmental impact statement issued in 2012, where the impact statement had selected the relocation, what's referred to as Route 3A, as the preferred local alternative. It considered co-location, which is the route that eventually has been selected as the route for the Southwest Light Rail project, and deemed it inadequate to preserve the environmental quality and quality of life in the area. When the Met Council took over responsibility for environmental review, it quickly shifted the preferred alternative to co-location, the, you know, what had previously been identified as inadequate to preserve the environmental quality of life. In October 2013, it had already selected that as the, you know, approved route and had indicated that all of the other options were off the table, and it submitted it to municipal consent in spring of 2014. All of this was far in advance of the supplemental draft environmental impact statement, which was the first environmental review of that new preferred alternative, which didn't come out until May 2015. The fact that all of the other options, according to the Met Council, had been dismissed before the initial environmental review of the preferred alternative, we think is a significant shift that demonstrates that political predetermination. So unless you have any other further questions, I'll reserve time for rebuttal. Okay. Thank you, Council. Mr. Nowin. Thank you, Judge Shepard. Thank you, Your Honors. May it please the Court. This Court should affirm judgment from Metropolitan Council for three reasons. One, there was no subject matter jurisdiction originally. As this Court is well aware, the federal court is a court of limited jurisdiction, and the lower court went beyond that when he created the brand new unprecedented NEPA action for a state player. Number two, if the Court gets past that, the LPA's failure to change the FTA's rod renders its claim moot. I mean, the FTA's got to be in the courtroom, and that's the whole purpose of the original claim that was approved by the lower court, to be kind of a placeholder until the federal remedy was available. In other words, in the final agency. Council, what do you make of your opponent's argument that the APA process is not suited to address some of the evidence that's being alleged here related to the politics that process here? What's your response to that claim that, you know, this is just not an appropriate forum to address those sorts of issues? I disagree, Your Honor. The process in an APA process, doing how it's been done, not just in the Eighth Circuit, but every circuit in the land, could allow for that kind of information. You know, it seems like the discovery is the reason for this request to supplement the administrative record. There can, a lot of this information was public and can be presented either in comments to the final EEIS or as part of the proceeding that should have gone if they wanted to pursue this, with including all the parties that should be part of it. There's also a process under the law that allows a party to request supplementation to a federal judge in certain circumstances. And there are limited circumstances, but certainly in this case, the judge, you would believe, would allow that given how he ordered. And in any event, we never had an administrative record because there was never a challenge, so it's unknown whether this information would have been part of the administrative record. The political side of it is kind of interesting to hear it. It sounds like it wasn't even an environmental claim, as it was argued just now by the LPA's lawyer, talking about a political claim. But this is an environmental basis. NEPA is an environmental basis. And the issue boils down to, if you skipped a third issue, is whether there was an irreversible and irretrievable decision commitment to a particular course of action. And that the court analyzed thoroughly as a trial court, not once but twice, and found under the law, using all the laws, including the law in the Fourth Circuit and Sixth and Ninth and Tenth and Eleventh, determined there was no such binding commitment. There's nothing like that. Do you have a case where your third point there, the claim that there was an irreversible commitment, premature commitment to a course of action, do you have a case where that kind of claim was heard in an APA proceeding? Absolutely, Your Honor. And what's your best case on that? The best case is probably the Forest Guardians versus USFWS case. That's one. The National Audubon Society versus Navy case is another. And the case that we presented to the court under 28J just a few days ago, which is from six weeks ago in the Fourth Circuit, is exactly on point. Because if a plaintiff wants to challenge that there was predetermination prior to the finalization of FEIS or the ROD, it can do it in the proper proceeding under the APA after there's a final agency action with the FTA in the courtroom. That has been done countless times. And I think we cite all those cases. And by the way, the lower court analyzed, I think, each and every one of those cases during the 2015 summary judgment order, and then went on and said there was nothing new in 2018 and decided in favor of my client. So absolutely, Your Honor, there's no barrier to a plaintiff saying, hey, you should toss out this environmental review because there was nothing new. Would you concede that there's merit to the point that the district court made that there, in the right circumstance, it would be appropriate for an action to be brought up during the ongoing of the process in order to prevent an eventual APA proceeding from becoming really an inadequate recourse? In other words, that the momentum of the project could be such that by that point, it can't be, as a practical matter, it's not going to be altered or reversed. And so there could be, in the right fact situation, a need for a remedy, recourse to the court to hold the status quo to prevent the administrative procedure from being really an inadequate remedy. I would not agree with that, Your Honor. I do not think that's... Why not? Because that would be premature. There's no final decision about what the project is. There's no final agency action. FDA hasn't had a chance to review the final environmental impact statement and issue its rod. And it's never been done before, ever. And the reason you don't need that, Your Honor, is that each and every one of the points that you just made, Judge Shepard, can be made in the proper setting, which means after final agency action in an APA action with the federal government as one of the parties. And the flip side, of course, if it's made in this against a private party, the federal government is not even in the courtroom. Now, you can say it's moot because they didn't appeal in time. You can apply prudential mootness because the federal government's not in the courtroom. Or you can also rely, Your Honors, on the case law that says that even if a state actor has done things that arguably is improper, the federal government is always a backstop because there's no indication. They were involved in the political discussions. There's no indication they had any role in any of that. And yet they independently analyzed the environmental documents to determine whether it was adequate and reviewed the FEIS and ultimately, as Judge Shepard, as you asked earlier, issued their record of decision, which was not appealed. So not only is the federal government not in the courtroom, but the federal government had the opportunity and did look this stuff over and issue its own record of decision. Well, do any of the cases that you cited, do they involve a fact situation in which anything close to this municipal consent procedure and requirement was involved? I'm going to answer in two ways, Your Honor. Not in the terms of municipal consent, but if you look at what I call the Purple Line case, which is the D.C. Circuit case about the coalition that was challenging the D.C. light rail transit, you can see that that court talked about the process necessary on a kind of public works project like this, a two billion dollar, biggest one ever in the state of Minnesota, that requires there to be involvement of local government and all the way through in order to effectively get the best project for the metropolitan area. So that's one answer I have. The second answer is no, not exactly like that, because that municipal consent process was not binding. And the fact of the matter is in the cases that are determined where there was predetermination, Your Honor, those are in cases where there was a binding commitment made by a party that made the environmental review empty, if you will, a binding commitment. And the case law defines a binding commitment as a contract, a permit, and a binding commitment. An MOU by its nature is not a binding commitment, it's a memorandum of understanding. And none of them obligated the Metropolitan Council to build this route. So I would answer in two ways, Your Honor, that the Purple Line case out of the D.C. Circuit exactly talks about this kind of process. And in fact, the trial court very thoroughly went through all the cases of predetermination and determined that this political process, which is not part of the environmental process, but this political process did not result in a binding commitment as opposed to the cases that it had determined previously. Do you know, just as a matter of the factual record, how many municipalities were involved in the municipal consent process on this particular project? I'll try and tick them off. I don't know the number off the top of my head, but it runs from it would be Hennepin County, because that's the county involved, the City of Minneapolis, St. Louis Park, Hopkins, Edina, it didn't go in Edina, but it's near Edina, and then Eden Prairie. I think those are all the political divisions involved. So I counted seven or eight. Something like that, yes, Your Honor. So, and again, if you look at the cases, and forget about the cases, look at the regulations, it's obligatory on the part of the project promoter, if you want to call the Metropolitan Council that, and the FTA to bring in those parties, to make sure there's not a bunch of environmental, or you end up with X, and no one has weighed in on the realities of X, where the stations are, and all that kind of stuff. So that is the process. It's complicated. It's costly. It involves politics, and no question about it, but it doesn't involve any of those things in a binding commitment sort of way, because the environmental review is off to the side, and is done properly by Metropolitan Council, and always overseen, in this case, by the FTA. Now, if I may, Your Honor, let me talk a little bit about the second issue, and that's the mootness. And, you know, if you look at the, I think, Judge Kobus, you pulled out the evisceration of the federal remedy language, and there's language like that in the original order of March 6, 2015, and then similar language was in several orders of the trial court and other matters. And it was very clear that this unprecedented private action under NEPA, which I think would not only require overturning Eighth Circuit law, but probably law throughout the land, was at most just a bridge to the point where the federal remedy could be utilized. And the reason for that, Your Honors, is it all goes back to the Limehouse decision out of the Fourth Circuit. In that case, there was a final agency decision. It was an APA. Everything was done properly, and the federal government and the state entity were all parties to this challenge about adequacy of the environmental review. And the Fourth Circuit said, we think we can enjoin the state under NEPA in a form of pendant jurisdiction to allow the challenge to the environmental review to proceed without worrying about, in this case, roads being constructed. It's kind of a logical decision. In fact, it's not unusual in other circuits. They don't go to NEPA. They just say they have that include the state entity as part of APA to make sure there's not action while the challenge is proceeding. So it was a bridge. It was a bridge. And the language of the court was very clear because this was this unprecedented, limited, narrow action, not designed to be a broad-ranging cause of action, which is what the plaintiffs now or the appellants now are using it as, but rather as a bridge to when there's final agency action and a rod. So we get to that point, and it's July 16, 2016. And the law is clear, 23 U.S.C. 139 L, I think it is, 1, that there's a 150-day time period to appeal. You've got to keep these matters moving from the publication in the Federal Register. And that was all done properly. December 22nd was the last day for them to, for the LPA, the appellant to preserve their federal remedy. They had already gotten the benefit of this case for two years or something like that. They didn't do it. I mean, they just didn't do it. And this court- Is that 150 under the APA? It's under the statute. I don't know if that's an APA. I know, I believe it's 23 U.S.C. 139 C, subsection L1, Your Honor. It's a shortened statute of limitations because of the policy that you can't wait forever because these things proceed. You've got to, if you're going to have an objection, a challenge to the adequacy of an environmental document, you've got to do it right away. They didn't do it. They also could have challenged under the state law, if the case is only against the Metropolitan Council, there's a state version of NEPA called the Minnesota Environmental Protection App or MEPA. And that has a 30-day time period. Again, you got to keep the process moving. That time came and went to, in September of 2016, no MEPA challenge. So he ended up with this limited and narrow action that benefited the plaintiff, the appellant here, in that they kind of did this pre-pendant jurisdiction unprecedented, but then they didn't take advantage of what the lower court offered. I do want to comment about discovery, Your Honors, because if you hear the advocate for LPA, it sounds like somehow the Metropolitan Council delayed or didn't produce discovery in a way so they couldn't provide it in response. Because Judge Kobus, you asked about whether there was comments made by the plaintiff, the appellant, for the final environmental impact statement. The fact of the matter is that the lower court ordered in May 2016 that discovery be provided. And by June, in other words, within a month or so, a little less than a month is my memory, we provided thousands of documents, including, I think, all the emails that have been produced for the lower court and part of the record here. All that was done. And you remember that the rod was not issued until July 2016. So the fact of the matter is that the plaintiff below, the appellant here, had the discovery. There was some extended discovery that went beyond that, but that was mostly third-party discovery and doesn't even relate for the most part to this case. So we did what we had to do. We responded to discovery. I'll be honest, we weren't happy about it because we thought this was an administrative record case, but we were ordered to do it and we did it. And we did it in a timely fashion. We did it in time for them to utilize that discovery for objections or comments about the adequacy of the final environmental impact statement. So, your honors, let me just go back to the three issues. The disposition of the Metropolitan Council that this court, sitting as one of limited jurisdiction, simply doesn't have the jurisdiction to do what the lower court allowed to have happened here. It would be allowing a direct federal claim against a non-federal actor with no federal party in the action and a private right of action under NEPA, which, as Judge And that's unprecedented. Prior to final agency action, again, unprecedented. Not under the APA, again, unprecedented, except for that little bit of pendent jurisdiction language in the Limehouse case. And it's also, by the way, based on a regulation that you've read a lot about, 1501 A and D, which black letter law says if there's not jurisdiction under the statute, regulations under the statute don't provide a cause of action. That's the Alexander versus Sandoval case. That is the cause of action this court is being asked to approve. And it would be the first time ever, not just here, but in any jurisdiction in this country. And I think the court should not do that. But if it does, then we reach the mootness issue number two. And then if the court determines there is not mootness because of the failure to appeal on time, then we get into the facts and law of the predetermination. And the lower court did a very thorough job. We had our argument and summary judgment Monday after a Friday decision that there was jurisdiction. And we all worked really hard to argue. And we presented all the cases, the court, pretty much the same cases now, with the one exception, the new one, which supports us, save our sound, the Fourth Circuit. And four months later, the court said there was no basis for summary judgment for the plaintiff. Gave the plaintiff a chance of discovery, had two years or more of discovery, and did not bring any binding commitments in. And so the court just affirmed what it had already done. For all those reasons, Your Honor, we ask that this court affirm the lower court. Thank you. Thank you, counsel. All right. How much time does Mr. Landon have? Two minutes, 37 seconds, Your Honor. All right. Go ahead. And we ask a lot of questions of you, Mr. Landon. Take five minutes to wrap up. Thank you, Your Honor. I want to start off identifying one case that I believe is important for the court to look at, which I think is outside of what opposing counsels represented as the case law about the binding commitment requirement for predetermination. And that's the International Snowmobile Manufacturers Association v. Norton case out of the District of Wyoming. This case was cited in all of the briefs. This was a case where the court found that there had been political predetermination of a decision regarding whether snowmobiles would be allowed in Yellowstone Park. And one of the things that the court focused on was the fact that a draft environmental impact statement had come out indicating that the agency was inclined to allow snowmobiles. And seven months afterwards, a senior agency official essentially announced publicly that no, there are not going to be any more snowmobiles in Yellowstone and that there hadn't been any environmental study in between the draft environmental impact statement and that public declaration to justify such a significant shift in preferences. What the court said was that you know, given these definitive statements, that it was clear that the final environmental impact statement and the rod that were issued were nothing more than pro forma compliance with the requirements of NEPA. We believe that that's the case here and that was not a case that required some contractual commitment to establish predetermination. Insofar as the district court did believe that some sort of contractual commitment was required, you know, we did argue that the MOUs that were negotiated and signed during the municipal consent process were binding. And in fact, we presented evidence from former Mayor Betsy Hodges when she contacted the Met Council addressing the argument that they made in this very case that the MOU was somehow non-binding, that the City of Minneapolis certainly did consider that MOU to be a binding agreement. What's important to keep in mind is that the MOU was not requiring Met Council to, it's not that the MOU itself was requiring them to go with the co-location route, it's that they were trying to convince the City of Minneapolis to drop its opposition to co-location and had to agree to certain modifications to that route in order to secure their agreement to drop that opposition. We do believe that that was a binding commitment and indeed the City of Minneapolis believed it was a binding commitment. Is there some Minnesota law on how binding? Well, it is important to note that it was... Memorandum of understanding or statutory or case law? That memorandum of understanding was the result of a three-day mediation held by a former magistrate, federal magistrate judge. And there is state, there are state issues that wasn't necessarily briefed or argued below, but I do believe that, you know, that law does support the fact that the signed memorandum of understanding at the end of the result of the mediation between the parties was binding. The one thing that I'd like to point out is that the purpose of the NEPA's protections are entirely procedural. The purpose of those procedural requirements, those procedural protections, is to ensure that a fully informed and well-considered decision takes place and to disclose to the public what the agency had considered in the environmental concerns of its decision-making. We believe that that is what was motivated by opposition from St. Louis Park about not wanting freight rail to be relocated through that municipality. And that the environmental impact statement demonstrates that kind of political predetermination. Which is why we believe that an order, that the process be restarted requiring an impact statement to consider an objective evaluation free of that previous taint is appropriate. Thank you, Your Honor. Thank you, counsel. The case has been well argued this morning. I appreciate the efforts of counsel and the case is submitted. And with that, you may stand aside.